# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURU RAM DAS ACADEMY INC., | Case No. 1:16-cv-01906-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JOHN KERRY, et al., | (ECF Nos. 34, 35, 37, 38, 39, 40) |
| Defendants. | |

Currently before the Court are the parties' cross-motions for summary judgment.[1]

## I.

## BACKGROUND

Plaintiff Guru Ram Das Academy ("Plaintiff") filed a petition with the United States Citizenship and Immigration Services ("USCIS") for a nonimmigrant worker, Kriti Arora ("Arora" or "the beneficiary"). The petition sought for Arora to be classified as an alien religious worker as defined at section 101(a)(15)(R) of the Immigration and Naturalization Act ("INA"). The petition was denied on February 25, 2015, because Plaintiff had not demonstrated how they would compensate Arora. (AR 107, 161-162.)

On April 30, 2015, Plaintiff filed a second petition with USCIS to classify Arora as a religious worker. (AR 30-36, 44, 153-204.) On September 21, 2015, Plaintiff's petition for a nonimmigrant worker was approved. (Administrative Record ("AR") 30.)

---

[1] The parties have consented to the jurisdiction of the magistrate judge. (ECF Nos. 28, 33.)

On September 23, 2015, USCIS conducted an on-site inspection of Plaintiff's facilities and determined that it qualified as a place of religious worship as defined by 8 C.F.R. § 214.22(f)(3). (Sec. Am. Compl. ("SAC") ¶ 10.)

On December 4, 2015, Arora submitted an application for a visa. (AR 15-20.) Arora was interviewed by the U.S. Embassy in New Delhi on January 8, 2016. (SAC ¶ 12.)

On November 20, 2016, the U.S. Embassy sent notice that the visa was refused pursuant to section 214(b) of the INA because Arora had failed to demonstrate sufficient ties to India. (SAC ¶ 13.)

On December 20, 2016, Plaintiff filed this action against Defendant John Kerry, Secretary of State of the United States Department of State seeking declaratory relief. (ECF No. 1.)

On January 27, 2017, the United States Embassy in New Dehli sent a memorandum to USCIS stating that upon investigation it was determined that Arora was not trained as a Sikh religious worker. (AR 11-12.) On this same date, a letter was mailed to Arora stating that she was not academically or professionally qualified to receive an R-1 religious Visa. (AR 13.) On February 14, 2017, Plaintiff filed a first amended complaint adding Lori Scialabba, Acting Director of the USCIS as a defendant in this action. (First Am. Compl. ("FAC") ¶ 4, ECF No. 7.)

On March 1, 2017, USCIS issued a notice of intent to revoke ("NOIR"). (AR 43-51.) Plaintiff submitted a response to the NOIR on March 30, 2017. (AR 52-141.) On April 28, 2017, Plaintiff's petition for a nonimmigrant worker was revoked. (AR 1, 30.) The revocation stated that Plaintiff did not sufficiently explain or provide independent objective evidence to overcome the issues identified in the NOIR regarding Plaintiff's ability to compensate Arora. (AR 3-5.) Additionally, it was found that the inconsistencies in the evidence were insufficient to demonstrate Arora's qualifications as a minister. (AR 5-8.) Therefore, Plaintiff had not met its burden of establishing how Arora would be compensated and that she was qualified for the proffered position. (AR 9.)

On May 30, 2017, Plaintiff filed a second amended complaint naming Rex Tillerson in

place of John Kerry, and James McCament in place of Lori Scialabba as defendants in the action. (SAC ¶¶ 3, 4.) On June 16, 2017, Defendants filed an answer to the complaint. (ECF No. 24.) The administrative record was filed under seal on July 14, 2017. (ECF No. 30.) On August 14, 2017, Defendant filed redacted copies of the administrative record. (ECF Nos. 31, 32.)

On August 16, 2017, the parties filed cross motions for summary judgment. (ECF Nos. 34, 35.) On September 13, 2017, the parties filed oppositions to the motions for summary judgment. (ECF Nos. 37, 38.) On October 4, 2017, Plaintiff and Defendants filed a reply. (ECF Nos. 39, 40.)

## II.

## STANDARD OF REVIEW FOR ADMINISTRATIVE ACTIONS

The district court's jurisdiction to review the USCIS's revocation of a visa petition is predicated on 28 U.S.C. § 1331 and reinforced by the enactment of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701(a)(2). Love Korean Church v. Chertoff, 549 F.3d 749, 753 (9th Cir. 2008). The APA guides review of agency actions and an agency decision or finding of fact may be reversed if it is "arbitrary, capricious, [or] an abuse of discretion," or "unsupported by substantial evidence." Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 693 (9th Cir. 2003) (quoting 5 U.S.C. § 706). The standard of review under section 706 is a narrow one and the district court may not substitute its judgment for that of the agency. Northwest Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." City & Cty. of San Francisco v. United States, 130 F.3d 873, 877 (9th Cir. 1997) (quoting Occidental Eng'g Co. v. INS, 753 F.2d 766, 769 (9th Cir.1985)).

"In order for an agency decision to be upheld under the arbitrary and capricious standard, a court must find that evidence before the agency provided a rational and ample basis for its decision." Northwest Motorcycle Ass'n, 18 F.3d at 1471. In reviewing the agency's explanation, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Motor Vehicle Mfrs.

Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  The reviewing court must determine the propriety of the agency's actions solely on the grounds invoked by the agency.  Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305, 1308 (9th Cir. 1984).

As this case involves review of a final agency determination under the APA, resolution of this matter does not require fact finding and this court's review is limited to the administrative record.  Northwest Motorcycle Ass'n, 18 F.3d at 1472.  The agency's factual findings, including credibility findings, are reviewed for substantial evidence.  Monjaraz-Munoz v. I.N.S., 327 F.3d 892, 895 (9th Cir.), opinion amended on denial of reh'g, 339 F.3d 1012 (9th Cir. 2003).  "Under this 'extremely deferential' standard," the court "must uphold the [agency's] findings unless the evidence presented would compel a reasonable finder of fact to reach a contrary result."  Id.

### III.

### NOTICE OF REVOCATION

On April 28, 2017, a notice of revocation of nonimmigrant petition was issued which addressed the evidence Plaintiff submitted in response to the NOIR finding that Plaintiff had failed to overcome the grounds for revocation.  (AR 1-9.)  The notice of revocation initially addressed how the beneficiary would be compensated.  (AR 3.)

> On the new form I-129, you state you will compensate the beneficiary a salary of $100 per week ($5,200 per year - for 52 weeks per year), in addition to the room, board, and expenses.  In a subsequent letter dated April 14, 2015, you state it is actually a salary of $400 per month ($4,800 per year), in addition to the room, board, and expenses.

> In the NOIR, you were advised that the 2013 and 2014 documents you submitted were identical to those submitted in a prior petition resulting in a denial for compensation.  In other words, USCIS had previously determined that the 2013 and 2014 documents did not adequately demonstrate how you would compensate the beneficiary.

> In the current petition, you also submitted three new documents referencing 2015 bank statements.  You were advised in the NOIR that, in totality, the 2013, 2014 and 2015 documents were insufficient to demonstrate how you would compensate the beneficiary.

> In response to the NOIR, you now submit the following as it pertains to compensation:
> • A letter from your counsel.
> • A copy of I-797E Notice of Action, indicating a Request for Evidence (RFE) was issued to you November 14, 2014 under the prior receipt number.
> • This is considered Page 1 of the RFE

4

- Page 2 of the RFE, requesting evidence of compensation.
- Note: only Page 1 (Form l-797E) and Page 2 were submitted.  Page 2 appears to continue, but the subsequent pages were not submitted.
- Page 4 of what appears to be the Denial Notice issued February 25, 2015
  - Indicating in part, that the submitted evidence is insufficient to demonstrate how you will compensate the beneficiary.
- A January 07, 2015 letter from your counsel, in response to the RFE.
  - This letter references a "Declaration"_ from [redacted] was submitted.
- An undated document titled "Declaration of_[redacted]"
- Form l-292, first page, of Notice of Action, indicating the prior petition was denied.

In sum, USCIS has reviewed your response and determined that the totality of the evidence in the record does not demonstrate how you will compensate the beneficiary.

Your response to the NOIR does not contain sufficient documentation to overcome this ground for revocation.  Your submission includes a new letter from your counsel, a prior letter from yourself regarding a previously filed petition, and copies of partial pages of the prior petition's RFE, RFE response, and Denial notice.

The current letter from your attorney makes several assertions; however, assertions by counsel are not considered evidence.    [Citations omitted.]  Additionally, counsel's argument concerning the initial approval of this petition is not persuasive.  Specifically, USCIS notes that the agency is not estopped from properly administering the Congressionally imposed requirements of the Act upon discovery of a prior erroneous decision.  [Citations omitted.]  In this case, the petition was erroneously approved without sufficient evidence to document the issue of compensation.

Your counsel further asserts that in the NOIR, USCIS disregarded the objective evidence filed with the current petition.  However, the NOIR specifically mentioned the new evidence you submitted within the current petition: three documents referencing 2015 bank accounts.  The NOIR further explained why these new documents were insufficient to demonstrate how you would be compensating the beneficiary.

In response to the NOIR, you did not address the deficiencies identified regarding the new evidence submitted.  Additionally, you did not address the deficiencies for the 2013 and 2014 evidence, which was also submitted in the prior petition.  Further, you did not submit any additional verifiable evidence.  The only documents submitted are the letters, partial pages from the RFE, and the denial notice for the prior petition denied for compensation.

Further, since the burden of proof to establish eligibility for benefits sought rests with the petitioner under section 291 of the Act, simply going on record with statements that are not supported by objective documentary evidence does not satisfy the burden of proof in these proceedings.  [Citations omitted.]

Overall, you have not sufficiently explained and provided independent objective evidence to overcome the issues identified in the NOIR.  Therefore, USCIS concludes that you have not sufficiently demonstrated how you will compensate the beneficiary.

(AR 3-5.)

The notice of revocation then addressed the minister qualifications. (AR 5-9.)

You indicate the beneficiary will be working in the proffered position of Granthi. The evidence on record does not establish what the denomination requirements are for the proffered position. Initially, the only information regarding the position's requirements and qualifications were your own attestations.

Additionally, the U.S. consulate identified discrepancies regarding the beneficiary's experience and qualifications during her interview and in her present and past visa applications.

As such, a NOIR was issued addressing all the issues. In response you submitted the following:
- A letter from your counsel stating in part:
  o USCIS cannot revoke a previously approved petition on the grounds that the evidence, if true, is insufficient to establish eligibility.
  o USCIS is without authority to dispute the beneficiary's qualifications, as the petition was already approved.
  o The inconsistencies between the beneficiary's prior 2013 tourist visa application, and 2015 visa application, are nonexistent or inconsequential due to the following:
    ▪ The petition already contains objective documentary evidence to show that the beneficiary qualifies as a minister.
    ▪ The experience letter from the organization abroad, stating the beneficiary has been performing religious duties for them between 2008 to March 2014, makes no reference of employment. It was the Embassy who reclassified this letter to mean employment.
    ▪ The beneficiary's educational degree was not listed in the 2013 visa application, as the school is not considered a traditional university offering formal educational degrees. The document submitted "uses the word 'degree' in the titular sense of the word, not the academic sense."
    ▪ From 2008 to October 2010, the beneficiary performed religious functions for the Gurudwara[2] abroad seven days a week. When she moved to Amritsar and started working as a teacher, she worked less frequently. From November 2010 to March 2014, the beneficiary would perform her Religious duties on weekends, and during winter/summer breaks. This is documented by the certified letter from the school, stating the beneficiary's schedule was flexible and she was allowed time off to procure teaching credentials.
    ▪ Simply because the Embassy was unable to contact the Gurudwara abroad and verify the beneficiary's experience, it is illogical to think the beneficiary's experience is not what was represented.
  o The reference to "ordination" was simply to allow the Service to more easily identify the beneficiary's qualification document from the Gurmat Music Academy. In choosing this title for the cover page, Counsel explains that he did not suggest that the beneficiary had participated in any official ordination and further states that the document itself does not show the word "ordination," which appears only on the cover page.

---

[2] The parties use the spelling "gurudwara" and this is consistent throughout the administrative record and pleadings and will be used in quoting the record.

- o Qualifications -
  - "The regulations do not require Respondent to provide a detailed description of the requirements necessary to becoming a Granthi. The regulatory requirements set forth apply only to religions 'that do NOT require a prescribed theological education . . .' Sikhism, however, does require a prescribed theological education.
  - Educational - most important educational qualification relates to classical music. In addition, one must master a musical instrument and have good literary, oratorical and personal skills. The core curriculum is a 2 year program.
  - Professional - A Granthi must spend a few years as an assistant to a reputable Granthi. Due to an increase demand for Granthies, some Gurdwaras have foregone this requirement.
  - Personal/Spiritual Attributes - a Priest must be: married, a role model, team player, baptized practicing Sikh, and adhere to the Spiritual Code of Conduct.
- Declaration letter from the beneficiary.
- The school document and experience letter from the Gurudwara abroad, previously submitted.
  - o With the addition of the school document in its original language - previously only the translation was provided.
  - o Both documents are dated 2014.
- 2017 dated document from Spring Blossoms School, the beneficiary's employer abroad, indicating the beneficiary was a teacher there from November 2010 to March 2014.
  - o The letter states the beneficiary was given casual leave to attend important lectures and training for her educational degrees like B.Ed, so she may appear for the exams.
  - o No reference is made to the beneficiary's religious duties.
- Online printouts of the Gurudwara's website abroad.

The first assertion from counsel states USCIS may not revoke a previously approved petition simply because the evidence is found to be insufficient to establish eligibility. However, according to regulations under 8 C.F.R. § 214.2(r)(18)(iii)(A)(5), USCIS may revoke a petition (as long as the petitioner is put on notice), if it is found that the petition was approved in error. In this case, you were properly put on notice via the NOIR, advising you that the evidence was insufficient to establish eligibility.

The second assertion from counsel challenges USCIS' authority to question the beneficiary's qualifications after an approval is issued. However, as stated under 8 C.F.R. § 214.2(r)(16), evidence submitted may be verified by USCIS through any means determined appropriate by USCIS. Further, as stated under 8 C.F.R. § 214.2(r)(18)(iii)(A)(2), if the statement of facts contained in the petition is found not to be true and correct, USCIS may issue a revocation on notice.

Regarding the beneficiary's experience letter from the organization abroad, counsel asserts that this letter does not make reference to actual employment. Further, counsel asserts that the beneficiary did not include it as employment in her 2013 visa application because she was performing the duties on a voluntary basis. However, USCIS notes that in the 2015 visa application, the beneficiary did list it as employment. You have not explained why the beneficiary would now claim it as employment on her visa application, when the facts regarding that experience have not changed. Moreover, it is noted that at no time during the current or prior visa application has it been stated that the beneficiary's

experience was on a volunteer basis; it is only now, in response to the NOIR, that the prior experience is being characterized as volunteer work and not employment.

In regards to the educational degree document, Counsel asserts the beneficiary did not claim it in her 2013 visa application because the school is not a traditional university offering formal degrees, and because the 'degree' earned was not a degree in the traditional sense. However, if the same still holds true, it has not been explained why the beneficiary would claim it in her 2016 application.

Counsel explains the issue regarding the distance from the Gurudwara and the beneficiary's home and employment as a school teacher in Amrístar. Counsel states the beneficiary was initially performing the claimed duties seven days a week, until 2010, when she obtained the teaching position and moved to Amristar [sic]. At that point, according to counsel, the beneficiary would only perform the duties on weekends and extended vacation periods, such as winter/summer break. In support, you submitted a letter from the beneficiary's teaching employer, stating that the beneficiary was allotted time off to procure teaching credentials. However, the letter from the beneficiary's employer does not actually make any reference to the beneficiary's participation with the Gurudwara. Moreover, there is no further evidence from the Gurudwara indicating that the beneficiary was initially performing the duties seven days a week, and only on weekends and extended vacations starting in 2010. The only evidence submitted was a duplicate of the originally submitted documents dated 2014.

In regards to the "ordination" wording, counsel explains that it was simply his own wording on the cover page for descriptive purposes, and that the wording should not be used to discredit the content of the actual document. It is noted that USCIS did not discredit the actual document based on the single reference within the cover sheer. The document was not substantiated because it was only a translation; the actual document in its original foreign language was not submitted. See 8 C.F.R. § 103.2(b)(3). Further, it is noted that the language of "ordination" was also used by the signatory of the current petition, Nazar Singh Kooner. It has not been explained why the signatory also referenced the beneficiary's qualifications as including "ordination."

Counsel asserts that Sikhism requires a prescribed theological education. However, in the same letter, Counsel states that the school document submitted references "degree" only in a titular, nonacademic context. It is therefore unclear whether the submitted educational document reflects the completion of a prescribed theological education adhering to Sikh requirements.

Further, counsel's statements indicate the core curriculum for training as a Granthi consists of a two-year program. However, the document submitted reflects that the beneficiary attended school for only a year from 2007 to 2008.

Moreover, you now claim the experience was voluntary, and initially seven days a week. It was not until 2010 that the performance of the stated duties was changed to weekends and extended school holidays. However, this explanation was not previously submitted, and current documentation from the Gurudwara abroad does not corroborate the statements.

Overall, the evidence submitted does not sufficiently explain the inconsistencies identified in the record. You have not sufficiently explained why the beneficiary's religious work experience was not referenced in the 2013 visa

application, but was in the 2016.

> As such, the submitted evidence and statements are insufficient to demonstrate the beneficiary's qualifications as a minister.

(AR 4-8.) Defendant found that Plaintiff had not met her burden of establishing eligibility for the visa requested. (AR 9.) Ultimately, it was determined that Plaintiff had not established how the beneficiary would be compensated or that the beneficiary qualified for the proffered position. (AR 9.)

## IV.

## DISCUSSION

Plaintiff argues that initially Arora's visa was erroneously denied because she failed "to demonstrate that he/she has a residence in a foreign country which he/she has no intention of abandoning." (Pl.'s Notice of Motion for Summary Judgment and Memorandum in Support ("Pl. MSJ") 12,[3] ECF No. 35.) Plaintiff contends that this is in clear violation of the APA and is contrary to law. (Id.) Plaintiff asserts that it was only after this lawsuit was filed that the USCIS raised the purported grounds and abandoned the previously stated reason for denying the visa and the Court should view the change in position and the newly stated reasons as suspect. (Id.)

Defendant contends that the standard for revoking a petition is the same standard for determining whether the petition should have been granted in the first instance. (Def. Motion for Summary Judgment ("Def. MSJ") 12, ECF No. 34-2.) Defendant argues that Plaintiff is incorrect to argue that a heightened standard should apply to the revocation of the petition and that this argument is contrary to the regulations which provide that USCIS may revoke a petition at any time, even after expiration of the petition. (Id. at 12-13.)

While Plaintiff argues that Court should be skeptical of the later asserted reasons for revoking the petition, no visa had been issued. "[A] visa petition is not the same thing as a visa" and "[a]n approved visa petition is merely a preliminary step in the visa application process." Tongatapu Woodcraft Hawaii, Ltd., 736 F.2d at 1308 (citing 1A Gordon & Rosenfeld, Immigration Law and Procedure § 3.5(j).) An approved petition "does not guarantee that a visa

---

[3] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

will be issued, nor does it grant the alien any right to remain in the United States." Tongatapu Woodcraft Hawaii, Ltd., 736 F.2d at 1308; see also Matter of Ho, 19 I.&N. Dec. 582, 589 (BIA 1988) ("[T]he approval of a visa petition vests no rights in the beneficiary of the petition.").

Plaintiff relies on F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502 (2009), to argue that the USCIS may not revoke the petition without providing an explanation for the change in position. However, Fox Television Stations, Inc. addressed the situation where the agency was reversing its position on a policy, id. at 514, not the revocation of a petition as is the case here. Further, in Fox Television Stations, Inc. the Supreme Court found no basis in the APA for a requirement that all agency change be subjected to more searching review. Id.

Plaintiff argues that prior to filing this lawsuit Defendant was not concerned with the sufficiency of the petition and it was approved. (Pl. MSJ at 21.) However, "the realization by the district director that he erred in approving the petition, however arrived at, may be good and sufficient cause for revoking his approval, provided the district director's revised opinion is supported by the record." Matter of Ho, 19 I.&N. Dec. at 590.

The statute itself provides that the USCIS may revoke an approved visa petition "at any time" when it finds "good and sufficient cause." Tongatapu Woodcraft Hawaii, Ltd., 736 F.2d at 1308 (citing § 205 of the Act, 8 U.S.C. § 1155; 8 C.F.R. § 205.3); Sheikh v. U.S. Dep't of Homeland Sec., 685 F.Supp.2d 1076, 1080 (C.D. Cal. 2009). "Despite the burden that § 205 places on the Government, a proceeding to revoke a visa petition, like the petition itself, is a part of the application process and falls under § 291 of the Act, 8 U.S.C. § 1361." Tongatapu Woodcraft Hawaii, Ltd., 736 F.2d at 1308. Therefore, once the agency "has produced some evidence to show cause for revoking the petition, the alien still bears the ultimate burden of proving eligibility" and "[t]he alien's burden is not discharged until the visa is issued." Id.

The Court declines Plaintiff's invitation to "view with scrutiny" and "afford minimal evidentiary weight" to the reasons provided to revoke the petition. (Pl.'s Opp. To Def.'s Motion for Summary Judgment ("Pl. Opp.") 8-11, ECF No. 38.) Plaintiff contends that it is clear that USCIS suddenly determined the evidence of record was insufficient solely due to the two page recommendation by the Department of State to revoke the petition. (Id. at 7.) Plaintiff contends

that this letter provides no information regarding the investigation that was conducted and is not substantial evidence to support the decision. (<u>Id.</u> at 8.) Defendant argues that many of the inconsistencies in the record became apparent after the petition was returned for further review. (Def. Opp. at 6.)

The record demonstrates that following the initial approval of the petition an investigation occurred and Defendant's revocation of the petition was based on inconsistencies that were identified upon review of the evidence in the record. Although Plaintiff argues that the initial denial did not state the reasons listed in the revocation decision, the majority of the reasons stated to revoke the petition were not known until the investigation which followed the initial denial of the visa. (Def. Reply at 4-5.)

The issues before this Court are whether "the decision was based on a consideration of the relevant factors;" "whether there has been a clear error of judgment[;]" <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc.</u>, 463 U.S. at 43, and whether the agency's factual findings are supported by substantial evidence, <u>Herrera v. U.S. Citizenship & Immigration Servs.</u>, 571 F.3d 881, 885 (9th Cir. 2009); <u>Monjaraz-Munoz</u>, 327 F.3d at 895.

Here, USCIS determined that Plaintiff had not established how the beneficiary would be compensated or that the beneficiary qualified for the proffered position. (AR 9.) In order to succeed on its challenge, Plaintiff must establishes that each of these bases were "arbitrary, capricious, an abuse of discretion or otherwise not in accord with the law." <u>Z-Noorani, Inc. v. Richardson</u>, 950 F. Supp. 2d 1330, 1337 (N.D. Ga. 2013); <u>BDPCS, Inc. v. F.C.C.</u>, 351 F.3d 1177, 1182 (D.C. Cir. 2003).

**A.      Alleged Deficiencies in Administrative Record Are Harmless Error**

Plaintiff alleges that Defendant USCIS erred by failing to consider all evidence because the administrative record does not contain record of the site visitation that was conducted during the course of the prior petition and the November 20, 2016 visa denial by the Embassy in New Delhi. (Pl. MSJ 22-23.)

Defendant responds that Plaintiff did not raise the issue of documents missing from the administrative record until August 16, 2017, more than two months after the record was filed.

(Def. Opp. 2 n.1.)  Defendant relies on 8 C.F.R. § 214.2(r)(16) to argue that a site visit is a condition precedent to approval of a religious worker petition and is not part of the revocation process, and therefore, would not be included in the administrative record.  (Id.)  Defendant also contends that the refusal letter was not in its possession nor was it relied on in revoking the petition.  (Id. at 2 n.2.)  This letter was subsequently included in the administrative record.  (Id.)

Section 214.2 provides that the agency may verify the evidence submitted in support of the petition through an on-site inspection which "may include a tour of the organization's facilities, an interview with the organization's officials, a review of selected organization records relating to compliance with immigration laws and regulations, and an interview with any other individuals or review of any other records that the USCIS considers pertinent to the integrity of the organization."  8 C.F.R. § 214.2(r)(16).  Plaintiff contends that during the review of the prior petition an onsite inspection was conducted and this should have been included in the administrative record here.

In reviewing an administrative proceeding, "the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706.  The Supreme Court has held the harmless error rule that is applied in regular civil cases applies to review of administrative proceedings.  Shinseki v. Sanders, 556 U.S. 396, 406 (2009).  The harmless error "doctrine may be employed only 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached.' "  Kazarian v. U.S. Citizenship & Immigration Servs., 596 F.3d 1115, 1119 (9th Cir. 2010) (citations omitted).  A court will not "overturn agency action unless there is a showing of prejudice to the petitioner."  Kazarian, 596 F.3d at 1119 (quoting Safari Aviation Inc. v. Garvey, 300 F.3d 1144, 1150 (9th Cir.2002)).  The party challenging the agency's decision has the burden of demonstrating prejudice from the error.  Sanders, 556 U.S. at 409.

Plaintiff argues that the site investigation during the prior petition is germane to Plaintiff's contention that Arora is qualified as a Granthi.  (Pl. MSJ 23.)  Plaintiff contends that the investigating officer observed Arora conducting Sikh religious services in the capacity of a Granthi and was satisfied with her qualifications as a Granthi and even expressed that she was

impressed with Arora's performance of the prayer service. (Pl. Opp. 12-13.) However, the issue in this matter is not whether Arora does a good job in conducting a prayer service but whether she meets the qualifications of a Granthi. The investigating officer's opinion as to Arora's qualifications and performance do not demonstrate that Arora had the requisite training and experience required by the denomination. Here, the petition was revoked following an investigation into the allegations set forth in the petition that Arora had training and experience to qualify as a Granthi. Therefore, the Court finds that any error in failing to include the site investigation in the administrative record in this case is harmless.

Similarly, Plaintiff has not demonstrated that it suffered any prejudice due to the letter initially denying the visa to Arora not being included in the record at the time the petition was revoked. Plaintiff argues that the reasons ultimately provided to revoke the petition were to cover up the wrongful denial of the visa in 2015. Defendant contends that it did not rely on the initial denial in making the decision to revoke the petition. The reasons stated in the initial denial of Arora's visa were not the stated grounds to revoke the petition. Plaintiff has not shown that the failure to include or even consider the initial denial would have changed the decision regarding Arora's qualifications as a Granthi or Plaintiff's ability to compensate her. The Court finds that any error in failing to include the initial denial letter in the record is harmless error.

### B. Whether the Agency Erred in Finding that Plaintiff had Not Established How Arora Would be Compensated

Section 214.2(r)(11) provides that "[i]nitial evidence must state how the petitioner intends to compensate the alien, including specific monetary or in-kind compensation, or whether the alien intends to be self-supporting. In either case, the petitioner must submit verifiable evidence explaining how the petitioner will compensate the alien or how the alien will be self-supporting." Where the petitioner will be providing compensation, "[e]vidence of compensation may include past evidence of compensation for similar positions; budgets showing monies set aside for salaries, leases, etc.; verifiable documentation that room and board will be provided; or other evidence acceptable to USCIS. IRS documentation, such as IRS Form W–2 or certified tax returns, must be submitted, if available." 8 C.F.R. § 214.2(r)(11(i).

Plaintiff argues that it has provided sufficient documentation to demonstrate its ability to compensate Arora in the manner described in the petition. (Pl. MSJ 17.) Plaintiff contends that the attestation stated that it would be providing Arora with room and board and $400 per month. (Id.) Plaintiff states that the standard set by section 214.2(r)(11(i) leaves much room for ambiguity in determining whether a petition has sufficiently documented its ability to compensate the beneficiary. (Id. at 18.) Plaintiff asserts that it raised $15,100 which was placed in a separate payroll account dedicated exclusively for the purpose of compensating Arora and has provided a bank statement and deposit receipt reflecting this. (Id.) Plaintiff states that this goes well beyond evidence of budgets which would be deemed sufficient by the regulations. (Id. at 19.) Further, Plaintiff has provided a declaration from Mr. Kooner explaining how the funds were raised.[4] (Id.) Plaintiff alleges that the evidence is sufficient to demonstrate its ability to compensate Arora. (Id.)

Defendant contends that courts have upheld decisions to deny a visa petition where the petitioner failed to demonstrate an ability to pay. (Def. MSJ 14.) Defendant argues that the petition was revoked because of Plaintiff's low bank balance, low financial statement net income balances, and there were too many unanswered questions about Plaintiff's ability to compensate Arora. (Id.; Def. Opp. at 3.) In response to the NOIR, Plaintiff's submitted the same evidence that had been deemed to be insufficient to demonstrate an ability to compensate Arora. (Def. MSJ at 15.) While Plaintiff argues that it had raised sufficient funds to compensate Arora, the documents provided did not establish that this was so. (Def. Opp. at 4.) The only new evidence submitted were two 2015 bank statements showing balances lower that the beneficiary's yearly salary and a transaction history printout for an account dated April 16, 2015, which shows transfers are pending. (Def. MSJ at 15.) The funds did not come from Plaintiff's daily account, and Plaintiff did not explain the origin of the $12,300 transfer nor who the account holder is. (Def. Opp. 5.) The regulations require the petitioner to provide verifiable evidence explaining how the beneficiary would be compensated and Plaintiff's evidence was insufficient. (Def. Opp.

---

[4] Although Plaintiff also argues the evidence of room and board, this is not at issue in this action so the Court shall not address evidence of room and board.

at 5.)  Defendant also argues that these documents were found to be suspicious due to the timing of the transfers.  (Def. MSJ at 15.)

Plaintiff responds that Defendant has provided no explanation for why the evidence of record was not sufficient to demonstrate the ability to compensate Arora when it was initially determined to be sufficient.  (Pl. Reply at 4.)  Defendant responds that Plaintiff is arguing that USCIS was compelled to find that Plaintiff had the ability to pay the proffered wage but has never explained why the evidence would compel USCIS to find an ability to pay.  (Def. Reply at 2-3.)

As relevant here, the regulation requires the petitioner to "submit verifiable evidence explaining how the petitioner will compensate the alien. . . ."  8 C.F.R. § 214.2(r)(11). "Evidence of compensation may include past evidence of compensation for similar positions; budgets showing monies set aside for salaries, leases, etc.; verifiable documentation that room and board will be provided; or other evidence acceptable to USCIS.  IRS documentation, such as IRS Form W–2 or certified tax returns, must be submitted, if available."  8 C.F.R. § 214.2(r)(11)(i).  The issue here is whether the agency erred in finding that the evidence submitted was insufficient to demonstrate an ability to compensate Arora.

Plaintiff submitted a letter dated April 14, 2015, stating that Arora would be paid $400. per month (a total of $4,800 per year) in addition she and her family would be provided with room, board, and living expenses.  (AR 154-155.)  In the petition, Plaintiff submitted tax returns and bank statements.  The tax information for 2012 shows a gross annual revenue for Plaintiff of $31,124.  (AR 216.)  The information for 2013 shows revenue of $58,980 and expenses of $56,236 leaving an excess of $2,744 for the year.  (AR 219.)  Plaintiff also submitted bank statements for the previous twelve months.  (March 2014 ending balance of $308.06, AR 257-260; April 2014 ending balance of $44.31, AR 261-264; May 2014 ending balance of 996.32, AR 265-270; June 2014 ending balance of $212.34, AR 271-276; July 2014 ending balance of $808.34, AR 277-280; August 2014 ending balance of $2,938.34, AR 281-284; September 2014 ending balance of $62.84, AR 285-289; October 2014 ending balance of $52.00, AR 290-292; November 2014 ending balance of $1,656.00, AR 293-296; December 2014 ending balance of

$2,642.63, AR 297-302; February 2015 205.63, AR 303-306; March 2015 ending balance of $1,469.85, AR 307-310). The majority of these were the same documents that Plaintiff had previously submitted from 2013 and 2014 that were determined to be insufficient to demonstrate an ability to compensate Arora. (AR 3.)

Review of the tax documents and bank statements for the prior year, demonstrates that Plaintiff's revenue is used to cover its expenses, and the yearly excess was insufficient to cover Arora's compensation and living expenses. Although Plaintiff argues that it submitted bank statements to show that the funds were available, the Court finds no evidence of a bank statement demonstrating that there is an account containing sufficient funds to compensate Arora. The agency did not err in determining that "viewed in totality, the bank statements and tax documents submitted do not demonstrate how [Plaintiff] will compensate the beneficiary." (AR 49.)

In the current petition, Plaintiff submitted three new bank statements which the NOIR found to be insufficient to demonstrate an ability to compensate Arora. (AR 3.) The main issue here is a transaction history which was submitted to demonstrate that funds had been raised to cover Arora's expenses. Upon review of the evidence that was submitted in support of the petition, the agency found that

> The only document showing sufficient funds is the "Transaction History" document. However, this document is insufficient for the following reasons:
> • It does not demonstrate the source of funds or how they developed over time
> • The document still indicates the amounts are "Pending"
> • The prior balance was $0.00
>   ○ It appears the money was deposited/transferred shortly before the filing of the petition
>     ▪ Deposit/Transfer date: April 16, 2015
>     ▪ Petition filing date: April 30, 2015
> • There is no evidence to demonstrate the money was allocated specifically for the beneficiary's compensation.
>
> Furthermore, you did not address any of the discrepancies mentioned in the prior denial notice. Therefore, additional verifiable evidence is required. Verifiable evidence must also be submitted to explain the discrepancies.

(AR 49-50.)

USCIS found that Plaintiff had not demonstrated the source of the funds and there was no evidence to show that the money was specifically allocated for the beneficiary's compensation, the record includes a declaration stating that to address the prior concern regarding Plaintiff's

ability to compensate Arora, $15,000. was raised from the membership and deposited in a separate payroll account dedicated exclusively to this purpose. (Decl. of Nazar Singh Kooner, AR 157.) This account was segregated and dedicated to the payment of Arora's salary for the period of the requested visa and would not be used for any other purpose. (Id.) The membership list was included although it is not indicated which members contributed to the funds raised. (AR 209-212.)

However, USCIS also found that evidence submitted as to this account was insufficient because the documents show that the funds were transferred shortly before the petition was filed and the funds were pending. (AR 49-50.) Plaintiff was informed that additional verifiable evidence must be submitted. (AR 50.) Ambiguities having been found in the record, "it is incumbent upon the petitioner to resolve the inconsistencies by independent objective evidence." Matter of Ho, 19 I.&N. Dec. at 591–92. Section 1361 of Title 8 makes "it . . . incumbent upon the petitioner to resolve the inconsistencies by independent objective evidence. Attempts to explain or reconcile the conflicting accounts, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice." Love Korean Church, 549 F.3d at 754 (citations omitted).

Here, in response to the NOIR, Plaintiff did not submit verifiable evidence, such as a bank statement, to show that the transfer had been completed and the funds were available. Plaintiff's submitted a new letter from counsel, Plaintiff's prior letter regarding a previously filed petition, copies of partial pages of the prior petition's RFE, RFE response, and denial notice. (AR 4.) Plaintiff points to no evidence submitted in response to the NOIR addressing the concern that the documentation provided did not show a completed transfer or that these funds were currently available to compensate Arora. In revoking the petition, USCIS reviewed Plaintiff's "response and determined that the totality of the evidence in the record does not demonstrate how you will compensate the beneficiary." (AR 4.) The finding that Plaintiff did not demonstrate how Arora would be compensated was reasonable and supported by the record.

Since Plaintiff did not meet its burden of presenting competent objective evidence to demonstrate that the funds were available to compensate Arora, the revocation of the visa

petition on this ground was not arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. Spencer Enterprises, Inc., 345 F.3d at 693.

### C.   Whether the Agency Erred in Finding that Plaintiff Had Not Demonstrated that Arora Possessed the Requisite Qualifications for a Granthi

In Plaintiff's reply, Plaintiff asserts that the USCIS relied on a single aspect of a petition to find that it is arguably deficient and relies on this to assert that it is unclear where the truth lies. (Pl. Reply at 4.) However, in this instance, the USCIS did not rely on a single aspect of the petition, but set forth multiple reasons that raised questions as to whether Plaintiff had demonstrated that Arora possessed the requisite qualifications of a Granthi.

The parties agree that 8 C.F.R. § 214.2(r) sets forth the requirements for a religious worker. (Pl. MSJ at 8; Def. MSJ at 16.) Plaintiff argues that there are multiple means of satisfying the requirements of section 214.2 and that it only needs to demonstrate that Arora was coming to the United States "solely as a minister **or** to perform a religious vocation **or** occupation as defined in paragraph (r)(3) . . . ." (Pl. MSJ at 14 (quoting 8 C.F.R. § 214.2(r)(1)(iii) (emphasis in original).) Defendant replies that Plaintiff misses the point, which is that the petition was denied due to the multiple inconsistencies in the record regarding Arora's experience and qualifications. (Def.'s Opposition to Pl.'s Motion for Summary Judgment ("Def. Opp.") 6-9, ECF No. 37.)

Under the regulation, a minister is defined as an individual who:

(A) Is fully authorized by a religious denomination, and fully trained according to the denomination's standards, to conduct religious worship and perform other duties usually performed by authorized members of the clergy of that denomination;
(B) Is not a lay preacher or a person not authorized to perform duties usually performed by clergy;
(C) Performs activities with a rational relationship to the religious calling of the minister; and
(D) Works solely as a minister in the United States which may include administrative duties incidental to the duties of a minister.

8 C.F.R. § 214.2(r)(3). A religious worker is defined as "an individual engaged in and, according to the denomination's standards, qualified for a religious occupation or vocation, whether or not in a professional capacity, or as a minister. 8 C.F.R. § 214.2(r)(3). In submitting a petition, the organization is required to provide evidence related to the petitioning organization,

8 C.F.R. § 214.2(r)(9), and evidence relating to the qualifications of a minister, 8 C.F.R. § 214.2(r)(10.) Relevant here, the petitioner must submit:

> (i) A copy of the alien's certificate of ordination or similar documents reflecting acceptance of the alien's qualifications as a minister in the religious denomination; and
> (ii) Documents reflecting acceptance of the alien's qualifications as a minister in the religious denomination, as well as evidence that the alien has completed any course of prescribed theological education at an accredited theological institution normally required or recognized by that religious denomination, including transcripts, curriculum, and documentation that establishes that the theological education is accredited by the denomination, or
> (iii) For denominations that do not require a prescribed theological education, evidence of:
> (A) The denomination's requirements for ordination to minister;
> (B) The duties allowed to be performed by virtue of ordination;
> (C) The denomination's levels of ordination, if any; and
> (D) The alien's completion of the denomination's requirements for ordination.

8 C.F.R. § 214.2(r)(10).

Plaintiff argues that Arora is a religious worker and as such all that was required to be submitted in support of the petition is a description of the position and the petitioner's attestation that the beneficiary is qualified for the position. (Pl. MSJ at 15.) Plaintiff's application requested that Arora be granted a visa based upon her position as a priest. (AR 33.) In her declaration, Arora states that she is a Granthi which is the Sikh religion's equivalent of a priest. (Decl. Of Aurora, ECF No. 32 at 72.) Section 214.2(r) requires the petitioner to submit "[a] copy of the alien's certificate of ordination or similar documents reflecting acceptance of the alien's qualifications as a minister in the religious denomination." 8 C.F.R. § 214.2(r)(10)(i). Although Plaintiff argues that the attestation of qualification should be enough, "[a]n agency's interpretation of a 'regulation it is charged with administering is entitled to a high degree of deference.' " City & Cty. of San Francisco, 130 F.3d at 880 (quoting Rainsong Co. v. Federal Energy Regulatory Comm'n, 106 F.3d 269, 272 (9th Cir.1997)). The agency interpreted the regulation to require proof that Arora met the qualifications to be a Granthi in the denomination, and Plaintiff was required to submit evidence establishing Arora's qualifications.

1. Denomination Qualifications for a Granthi

The notice of revocation stated that Plaintiff indicates that "the beneficiary will be working in the proffered position of Granthi. The evidence on record does not establish what the

denomination requirements are for the proffered position. (AR 6.) In the NOIR Plaintiff was informed that the "evidence on record does not establish what the denomination requirements are for the proffered position of Granthi. The documentation does not demonstrate the beneficiary is fully trained according to the denomination standards, or is fully authorized by the denomination to serve in the proffered position." (AR 48.)

Plaintiff does not argue that Arora meets the denomination requirements to be a Granthi, nor does Plaintiff set forth what the denomination requirements are for the position. Plaintiff asserts that its attestation demonstrates that Arora is qualified for the position of Granthi. (Pl. MSJ at 15.) Plaintiff points to the April 14, 2015 letter from Nazar Singh Kooner. (AR 153-155.) In this letter, Mr. Kooner stated that "Arora completed her religious training in 2008 and has been performing the duties of Granthi at Sant Baba Ishar Singh Sant Mandal Foundation, Gurdwara Sant Mandal Angitha Sahib Lambia in Pujab India since that time. (AR 155.) Mr. Kooner asserted that to document Arora's qualifications, "proof of her ordination and service with Sant Baba Ishar Singh Sant Mandal Foundation" was attached. (AR 155.)

While the notice of revocation makes some contradictory statements regarding whether Plaintiff has presented evidence regarding what the qualifications are for a Granthi, "[a] court can uphold an agency decision 'of less than ideal clarity if the agency's path may reasonably be discerned.' " Northwest Motorcycle Ass'n, 18 F.3d at 1478 (quoting Motor Vehicle Manufacturers Ass'n, 463 U.S. at 43). Here, the notice of revocation stated the bases for the determination that Plaintiff had not presented evidence demonstrating that Arora was qualified as a Granthi.

### a. Educational qualifications

In response to the NOIR, Plaintiff submitted a treatise by Dr. K.S. Dhillon (AR 86-90), which states:

> Due to the varied nature of their work, Granthis require multi-disciplinary training - particularly in Classical Music, Punjabi Arts and Literature and Philosophy. Given that the concept of a central Seminary to train Granthis does not exist, Granthis acquire their training from a variety of sources - Sangeet Academies, Linguistic Study and Work Experience.

(AR 88.) Plaintiff has not suggested that Arora received the required linguistic training, and the

Court finds no evidence in the record that Arora has participated in any linguistic study.

Dr. Dhillon goes on to further address the qualifications of a Granthi. As to the educational qualifications, this treatise states:

> The most important educational qualification relates to classical music - with a specialization in vocals, Ragas (musical scores) and Tabla Taals (musical rhythms). The reason for this is simple -the entire Sikh Scripture or Holy Book, the Guru Granth Sahib - is rendered in poetry complete with musical scores and rhythms. This 1430 page book is composed in 31 Ragas and countless taals drawn from the Kamatik (South Indian) and Hindustani (North Indian) versions of Classical Music. Good training in Sangeet (classical music) and years of experience is required to be able to render Gurbani (compositions of the Guru Granth) in the manner they were originally composed and written. The Granthi thus needs Vocal Training, Raag Training and Tabla training up to a diploma or degree level at a Sangeet (classical /spiritual music) Academy. In addition he/she needs to master a musical instrument of his choice to accompany his renditions of the Scripture. The usual instruments taught in Spiritual Sangeet Academies are the Harmonium, Mandolin, Rebab, Sitar and Tanpura.
>
> In addition, a Granthi needs good literary, oratorical and personal skills. He/She needs to understand the languages of the Holy Book-which is mainly a special kind of Punjabi used some 5 centuries ago. He/She needs good presentation skills to deliver effective discourses. He/She needs personal skills for all the teaching and instruction required of him. Personal skills are also necessary for the counseling that he/she is called upon to do. Beginning in the 1990s, the Sikh Missionary College, affiliated to Shromani Gurdwara Parbhandak Committee, Punjab has started training Granthis in the basic aspects. The core curriculum of this 2-year Program is Sangeet, Punjabi Language, Katha and Ceremonial. Younger Granthis - trained in this College are now being made available, though they are unable to meet the demand for Granthis even for Punjab.

(AR 88-89.)

According to the treatise, to meet the requirements Plaintiff must have received training up to a diploma or degree level at a Sangeet (classical/spiritual music) Academy. (AR 88.) It is this requirement that would be implicated by the "degree" that Arora received in 2008. In her petition, Plaintiff included a document dated July 3, 2014 which stated that Arora "completed her qualification in pure teachings of Sikhism from Sahibjada Ajit Singh Gurmat Music Academy in the year 2007-2008. During this period she received the honorable degree of Granthi through her dedication & faith in Sikhism." (AR 169.) Initially, the agency found that since Plaintiff did not comply with the requirement that the original of this document was included with the translation,

this document could not be considered.  (AR 48.)  In response to the NOIR, Plaintiff submitted the original copy of the document.  (AR 7, 75, 76.)

In addressing the document stating that Plaintiff received a degree, USCIS stated that

> Counsel asserts that Sikhism requires a prescribed theological education. However, in the same letter, Counsel states that the school document submitted references "degree" only in a titular, nonacademic context.  It is therefore unclear whether the submitted educational document reflects the completion of a prescribed theological education adhering to Sikh requirements.

> Further, counsel's statements indicate the core curriculum for training as a Granthi consists of a two-year program.  However, the document submitted reflects that the beneficiary attended school for only a year from 2007 to 2008.

(AR 8.)

Plaintiff presents evidence that Arora has received an honorable degree of Granthi through the Sahibjada Ajit Singh Ji Religious Music Academy.  (AR 76.)  Counsel argued that ordination was used by him in describing the document submitted and should not have been used to discredit Arora.  However, USCIS did not discredit the document based on the single reference to ordination, but because the original document was not submitted.  (AR 8.)

Plaintiff argues that "Gurmat Music Academy is not a traditional university offering a formal education such as a Bachelors or Masters degree.  Gurmat is a religious academy that offers religious training in Sikhism.  The notarized document states that Arora received the honorable degree of Granthi.  However, the document uses the word "degree" in the titular sense of the word, not the academic sense."  (AR 55.)  The issue regarding whether this document would be sufficient to demonstrate qualification as a Granthi was raised as an issue in the NOIR, and Plaintiff presented no evidence as to whether this is equivalent to a diploma or degree level at a Sangeet (classical /spiritual music) Academy.

Further, the USCIS found that it was indicated that the core curriculum for training as a Granthi consists of a two-year program.  (AR 8, 88.)  The treatise refers to one specific program at the Sikh Missionary College which offers a core two year program, but does not indicate that a two year program is required.  The treatise does state that some type of education/training would be required in literary, oratorical and personal skills as well as to understand the language of the Holy Book which is a special kind of Punjabi used 5 centuries ago.  (AR 89.)  Plaintiff does not

address these requirements.

Plaintiff has not presented evidence to demonstrate that Arora has participated in language study or that the degree she received is equivalent to the required education to be qualified as a Granthi.  The USCIS found that there was ambiguity in the record and Plaintiff did not present evidence to demonstrate that Arora was qualified as a Granthi.  The Court finds that it was reasonable for USCIS to find that "it is therefore unclear whether the submitted educational document reflects the completion of a prescribed theological education adhering to Sikh requirements.  (AR 8.)

### b.    Professional qualifications

According to the treatise, to meet the professional qualifications

> A Granthi must spend a few years as an Assistant to a reputable Granthi both to hone his educational skills as well as to learn the ceremonial aspects of his duties. An Assistant Granthi must have Tabla (Percussion Drum used in Classical Spiritual Music) skills so that he/she may accompany the Head Granthi during Gurmat Kirtan - the rendering of verses from the Holy Book in the Original Ragas, Taalas and Musical Scores in which the Scripture is composed - the most important aspect of the Prayer Meetings.

> An Assistant Granthi usually picks up the ceremonial aspects of the Granthi's job in a few years of tutorship under a Head Granthi at a Gurdwara with a medium to large size congregation.

> A Granthi should ideally have worked at least 3 years as an Assistant Priest before becoming a Granthi.  Due to the increasing demand for Granthis in Sikh Gurdwaras all over the world, Granthis have begun to forego this aspect of their training - opting instead to join smaller Gurdwaras as Granthi and then progressing to larger congregations.

(AR 89.)

Arora had previously submitted a request for a visa on March 16, 2013.  (AR 22-25.) Arora submitted another request for a visa in support of the petition to be a religious worker on December 4, 2015.  (AR 15-20.)  In support of the current petition, Plaintiff submitted a document certifying that from January 1, 2008 to May 3, 2014, Arora had been performing services at the Sant Baba Singh Sant Mandal Foundation.  (AR 78.)  The NOIR found multiple discrepancies with the claimed work experience.

First, Arora provided inconsistent information regarding her employment and experience in a 2013 interview and application for B1/B2 status. (AR 146.) In her April 1, 2013 B visa application, Arora stated that her primary occupation was education, and that she worked for the Spring Dale SE SEC School in Armritsar and had no other employment history. (AR 23, 146.) In the December 4, 2015 visa application, Arora claimed to be employed by the Gurdwara Sant Mandal Angitha Sahib Lambia in Mohali, India from March 1, 2008, through March 5, 2014, in addition to the employment listed in the March 16, 2013 application. (AR 16.)

Second, in the March 16, 2013 visa application, Arora also stated that she had attended Panjab University in Chandigarh from April 17, 2009 through June 17, 2010, and had no other education. (AR 23, 146.) In the December 4, 2015 visa application, Arora stated that she had attended BBKDAV College for Women from April 1, 1996, to March 31, 1997; DAV College from April 10, 1997, to April 1, 2000; Sahibzada Ajit Singh Gurmat Music Academy from January 1, 2007, to January 1, 2008; Vinayaka Mission University from January 1, 2008, through January 31, 2009; Kurukshetra University from April 1, 2010, to July 31, 2011; and Karnataka State Open University from January 1, 2012, to January 31, 2014. (AR 17-18.) Arora stated that she lived in Amritsar. (AR 24, 146.)

A discrepancy was found because in the current petition Plaintiff was claiming that Arora had been a Granthi since 2008 and had been performing the duties in Mohali, India from 2008 until March 15, 2014. (AR 146.) However, in her March 16, 2013 B visa petition, Arora stated that she was a school teacher in Amritsar with no other employment history. (AR 23, 146.) The prior petition did not mention any education at Sahibjada Ajit Singh Ji Religious Music Academy which was included in the current petition although this education was alleged to be completed from 2007 to 2008. (AR 23, 146.)

In response to the NOIR, Arora submitted a declaration, dated March 29, 2017, explaining the discrepancies identified. (AR 71-73.) Plaintiff stated that when she completed her visa application in 2013 she did not think to include all of her activities and education because it was just a visa and she did not know she was supposed to include it. (AR 72.) The agent who completed her visa application only casually asked her what her occupation was and

Arora responded that she was a teacher. (AR 72.) She did not think to include her experience at the Gurdwara as a job because it was not a job, but was volunteer. (AR 72.) She did not list her training as education because it was not university, but was religious training. (AR 72.) Arora did not know why Punjab University was listed on the 2013 application. (AR 72.)

In the revocation notice, the USCIS found that there were discrepancies regarding Arora's experience. (AR 7.) In addressing the discrepancies identified in this certification, Plaintiff argued that it did not make reference to actual employment and it was not included as employment in her 2013 visa application because she was performing the duties on a voluntary basis. (AR 7.) However, USCIS noted that in the 2015 visa application, Arora did list it as employment and it was not explained why the beneficiary would now claim it as employment on her visa application, when the facts regarding that experience have not changed. (AR 7.) Moreover, it was noted that at no time during the current or prior visa application had it been stated that Arora's experience was on a volunteer basis; and it is only in response to the NOIR, that the prior experience is being characterized as volunteer work and not employment. (AR 7.)

Although Arora states she did not claim her experience as a Granthi on the 2013 application because it was on a volunteer basis, as the USCIS found, Arora did not explain why she then included it as work experience on the 2015 visa application when the facts regarding the experience had not changed. (AR 7.) Similarly, while Arora states that she did not include her "religious training" as education because it was not university, she does not explain why she included it as education in the 2015 visa application. (AR 7.) USCIS did not err in determining that there were discrepancies regarding Arora's education and experience.

### c. Distance from Gurdwara to Arora's home

The NOIR also found a discrepancy because Arora was living in Amritsar, India and claimed to be working as a Granthi in Mohali, India which is four to five hours way. (AR 146.) Arora responded that when she was attending classes at the Sahibjada Ajit Singh Ji Religious Music Academy she was living with her parents in Panchkula, India which is close to Mohali. (AR 71.) After she finished her training at the music academy, she was a Granthi but her training was not complete so she performed duties at the Gurdwara, usually seven days per week.

(AR 71.)  In November 2010 she moved to Amritsar to teach school and would return to Mohali almost every weekend and volunteer at the Gurdwara.  (AR 71.)  She also would use her vacation time to return to Mohali and perform duties at the Gurdwara, staying with her parents near Mohali.  (AR 71.)  Arora also provided a letter from the Gurdwara which states that from January 3, 2008 to May 3, 2014, Arora was performing religious services for the Gurdwara.  (AR 78.)

Here, USCIS found that the letter from Arora's teaching employer stated that she was allotted time off to procure teaching credentials without any reference to her participation with the Gurdwara.  (AR 8.)  Since Arora stated that her duties at the Gurdwara were performed on weekends or school holidays the failure to mention Arora's work at the Gurdwara is not illuminative on the subject of whether Arora was working as Granthi during the time that she was also teaching.

However, USCIS also found that Plaintiff merely submitted a duplicate of the 2014 documents which do not corroborate Arora's statement that she was initially full time and in 2010 her duties changed to only on weekends and school holidays.  (AR 8.)  Attempts to explain or reconcile the conflicting accounts, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice."  Love Korean Church, 549 F.3d at 754 (citations omitted).  In response to the concern raised in the NOIR that Plaintiff could not be working as a teacher in Amritsar and performing the alleged duties of a Granthi four to five hours away in Mohali, Plaintiff resubmitted the letter from the Sant Baba Ishar Singh Sant Mandal Foundation which states that Arora performed early morning rituals, evening rituals, prayer rituals, and family weddings from January 3, 2008 to May 3, 2014.  (AR 78.)  The letter does not indicate that part of this time period was full time and the remainder was only on weekends and school holidays.

The agency identified the discrepancies that were found in the visa petition and Plaintiff was provided with the opportunity to supplement the record with additional evidence to address the concerns raised in the NOIR.  The agency found that Plaintiff did not submit competent evidence to reconcile the conflicts in the record.

The Court finds no error with the finding that Plaintiff did not submit competent evidence

to reconcile the identified conflicts in the record.

### d. The determination that Plaintiff had not demonstrated that Arora met the qualifications of religious worker was not arbitrary and capricious

Based upon review of the record, the Court finds that USCIS provided reasons that are supported by substantial evidence to determine that Plaintiff had not demonstrated that Arora was qualified as a religious worker under 8 C.F.R. § 214.2(r) due to inconsistencies in the record. Arora made inconsistent statements regarding her education and work experience and USCIS reasonably found that due to the inconsistencies in the record Plaintiff had not met its burden of proof. See Estrada-Hernandez v. Holder, 108 F.Supp.3d 936, 948 (S.D. Cal. 2015) (finding the record lacked sufficient independent evidence to corroborate inconsistences in the record).

### D. Defendant Did Not Arbitrarily Rely on Unreasonable Inferences, Assumptions, Conjecture and Speculation

Plaintiff also argues that Defendant USCIS uses "smoke and mirror attempts to discredit the evidentiary value of Plaintiff's evidence" and the revocation lacks rational and substantive challenges to the evidence that are without common sense or reason. (Pl. MSJ at 23-24.) Plaintiff asserts that Defendant was merely looking for a reason to deny the petition and failed to act as fair adjudicator of the record. (Id. at 27-28.)

In support of the position that the agency improperly revoked the petition, Plaintiff points to reasons contained in the United States Embassy's recommendation that the visa petition be revoked and the reasons stated in the NOIR that were not included in the notice of revocation. However, the fact that the notice of revocation did not contain these reasons is contrary to Plaintiff's argument that USCIS did not consider the evidence submitted in determining to revoke the petition.

For example, Plaintiff contends that the the NOIR relied on the statement of Arora's husband's niece that she was a housewife and not a Granthi. (Pl. MSJ at 24.) Plaintiff recognizes that USCIS did not assert this as a ground to revoke the petition. (Pl. MSJ at 25.) In response to the NOIR, Plaintiff provided the declaration of Plaintiff's husband's niece stating that their association has been primarily by telephone due to the difference in where they live and she has no personal knowledge of her uncle's employment status or the status of Arora. (AR

92.)  The reasonable assumption in this instance is that the agency considered this evidence and the niece's statements were not included as a reason to revoke the petition because her statements were determined to have no evidentiary value based on her subsequent statements that she did not have knowledge regarding Arora's status.

Similarly, Plaintiff points to the fact that the NOIR asserted that Arora's picture did not appear on the Gurdwara's website and that the consular office was unsuccessful in contacting the Gurdwara by telephone.  (Pl. MSJ at 28.)  However, neither of these facts were relied on in revoking the petition.  Again, the reasonable assumption is that USCIS considered the evidence presented in response to the NOIR and determined that such reasons were not a sufficient basis to revoke the petition.

Plaintiff complains that the USCIS unreasonably reached the conclusion that Arora claimed she had been ordained.  (Pl. MSJ 30.)  However, the decision to revoke the petition did not state that Arora had claimed to be ordained.  The decision noted that the USCIS did not discredit the document based on the reference to ordination but because the document was not substantiated because it was only a translation with the original of the document not being submitted.  (AR 9.)  Although the decision did note that Plaintiff had not explained why Mr. Kooner also referenced Arora's "ordination in" the petition.  (AR 9.)

The Court finds that Plaintiff has not demonstrated that USCIS failed to consider the evidence presented and was merely looking for a reason to revoke the petition.  While Plaintiff seeks for this Court to review the evidence and determine that it was sufficient to meet the statutory requirements, the district court's review of the administrative agencies decision is limited.  Unemployment Comp. Comm'n of Alaska v. Aragon, 329 U.S. 143, 153 (1946).  The administrative agencies decision need not be the only reasonable interpretation of the evidence, nor does this court have to find that it would have reached the same decision had it evaluated the evidence in the first instance.  Id.  The agency's interpretation must be upheld if it is supported by the record and has a reasonable basis in law.  Id. at 153-54.  The district court may not disturb the agency's findings under the deferential review standard "unless the evidence presented would compel a reasonable finder of fact to reach a contrary result."  Family Inc. v. U.S. Citizenship &

Immigration Servs., 469 F.3d 1313, 1315 (9th Cir. 2006).

In this instance, while Plaintiff points to evidence that could support a finding that Plaintiff had the ability to compensate Arora and that she was qualified as a Granthi, however, USCIS identified inconsistencies in the record that support a contrary findings. Here, having considered the evidence in the record, the Court does not find that the evidence compels a finding that Plaintiff has the ability to compensate the beneficiary and that Arora is qualified as a Granthi. Family Inc., 469 F.3d at 1315. As Plaintiff failed to present evidence to resolve the inconsistencies identified in the NOIR, the Court finds that the decision to revoke the approval of the petition was not arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. Spencer Enterprises, Inc., 345 F.3d at 693. Based upon the finding that the agency decision must be upheld, the Court declines to address the remaining issues addressed in the parties' pleadings.

## V.

## CONCLUSION AND ORDER

Based on the foregoing IT IS HEREBY ORDERED that:

1.     Plaintiff's motion for summary judgment is DENIED;

2.     Defendants' motion for summary judgment is GRANTED; and

3.     The Clerk of the Court is DIRECTED to enter judgment in favor of Defendants Rex Tillerson and James McCament and against Plaintiff Guru Ram Das Academy Inc.

IT IS SO ORDERED.

Dated:   **October 27, 2017**

_____
UNITED STATES MAGISTRATE JUDGE